# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SHARON D. NEAL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:08-00464** |
| v. | ) | **Judge Wiseman / Knowles** |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 16. Defendant has filed a Responsive Motion for Judgment on the Administrative Record and a Supporting Memorandum of Law, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry Nos. 20-21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on December 9, 2004,[1] alleging that she had been disabled since December 31, 1999,[2] due to severe asthma, high blood pressure, emphysema, chronic obstructive pulmonary disorder ("COPD"), sleep apnea, and hip pain. Docket Entry No. 11, Attachment ("TR"), TR 61-64, 78-85, 114-120, 123-129, 131, 215-216, 249-250. Plaintiff's application for DIB was denied both initially (TR 30-31) and upon reconsideration (TR 32-33). On March 30, 2005, based on Plaintiff's initial application for SSI benefits, the Social Security Administration determined that Plaintiff was disabled as of February 22, 2005. TR 251-252. On January 25, 2006, the Social Security Administration changed their initial decision and determined that Plaintiff was not disabled as of February 22, 2005. TR 257. Plaintiff sought reconsideration, and, upon that reconsideration, Plaintiff's application was denied on February 10, 2006. TR 258-260. On February 24, 2006, Plaintiff requested a hearing before an Administrative Law Judge.[3] TR 50-51. On May 30, 2006, Plaintiff received the requested hearing. TR 23-27. Plaintiff's hearing was conducted on July

---

[1] The applications for DIB and SSI do not have a date written in by Plaintiff or a stamp noting its reception by the Social Security Administration. TR 61-64, TR 249-250. A date contained within the text refers to December 9, 2004. *Id*. Plaintiff's brief states that Plaintiff filed the application on December 9, 2004. Docket Entry No. 17. Defendant's brief states that Plaintiff applied for benefits on November 22, 2004. Docket Entry No. 21.

[2] At the hearing, the alleged onset date of disability was amended to September 1, 2004. TR 15, 271.

[3] Plaintiff had previously requested a hearing on October 30, 2003. TR 36. A Notice of Hearing was mailed to Plaintiff on May 5, 2004. *Id*. On June 7, 2004, Plaintiff telephoned the Social Security Administration and informed them that she would be unable to attend the hearing because she was in Florida, that she could not miss any more work, and that her breathing had improved. *Id*. ALJ Taylor dismissed her request for a hearing on June 18, 2004. TR 34-37. On October 22, 2004, the Appeals Council dismissed Plaintiff's request for review. TR 38-40.

2

17, 2006, by Administrative Law Judge ("ALJ") William F. Taylor.  TR 267-288.   Plaintiff and

Plaintiff's mother, Wilma Neal, appeared and testified.  *Id*.

On September 15, 2006, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR

12-21A.  Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since September 1, 2004, the amended onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD); sleep apnea (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 6 hours and sit 6 hours in an 8 hour workday, and must avoid pulmonary irritants.

6. The claimant is capable of performing past relevant work as maintenance worker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from December 31, 1999 through the date of this decision (20 CFR 404.1520(f) and

416.920(f)).

TR 17-21A.

On November 14, 2006, Plaintiff timely filed a request for review of the hearing decision. TR 10-11. On March 7, 2008, the Appeals Council issued a letter declining to review the case (TR 6-9), thereby rendering the decision of the ALJ the final decision of the Commissioner.[4] This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

_____

[4] The Appeals Council considered additional evidence that it subsequently included as part of the Record. TR 9.

4

as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's

age, education, and work experience, any other relevant work that exists in the national economy

in significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial
> gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which
> significantly limits his or her ability to work (a "severe"
> impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it
> must be determined whether he or she suffers from one of the
> "listed" impairments[5] or its equivalent. If a listing is met or
> equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level
> impairments, it must be determined whether the claimant can
> return to the job he or she previously held in light of his or her
> residual functional capacity (e.g., what the claimant can still do
> despite his or her limitations). By showing a medical condition
> that prevents him or her from returning to such past relevant work,
> the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability,
> the burden shifts to the Commissioner to establish the claimant's
> ability to work by proving the existence of a significant number of
> jobs in the national economy which the claimant could perform,
> given his or her age, experience, education, and residual functional

---

[5]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) according greater weight to the opinion of the state agency non-examining physician than to the opinion of Plaintiff's treating specialist, 2) concluding that substantial evidence supported his finding that Plaintiff did not meet or equal a Listing and retained the Residual Functional Capacity ("RFC") to return to work as a

7

groundskeeper,[6] and 3) failing to consider the combined effect of all Plaintiff's impairments.[7] Docket Entry No. 17. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed with an immediate award of benefits to Plaintiff, or in the alternative, remanded. *Id*.

> Sentence four of § 405(g) states as follows:

>> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

---

[6] Although Plaintiff argues in her brief that the ALJ determined that she retained the RFC to return to work as a groundskeeper, the ALJ in fact found that Plaintiff had the ability to return to work as a maintenance worker. TR 21-21A.

[7] While Plaintiff argues that the ALJ erred in relying on the testimony of a Vocational Expert ("VE") regarding the requirements of a particular job without first inquiring whether the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), a VE did not testify at Plaintiff's hearing. Docket Entry No. 17, TR 267-288. Because no VE testified at Plaintiff's hearing, the undersigned will not address Plaintiff's argument regarding the ALJ's "erroneous" reliance on VE testimony further.

Case 3:08-cv-00464   Document 22   Filed 06/25/09   Page 8 of 21 PageID #: 98

**1. Weight Accorded to the Medical Opinions**

Plaintiff argues that the ALJ erroneously accorded the opinion of the state agency non-examining physician greater weight than the opinion of Plaintiff's treating specialist. Docket Entry No. 17.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that

opinion.

> (5) Specialization.  We generally give more weight to the
> opinion of a specialist about medical issues related to his or her
> area of specialty than to the opinion of a source who is not a
> specialist.
>
> ...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

Plaintiff argues that the ALJ erroneously accorded the greatest weight to the opinion of the state agency non-examining physician, Dr. Michael Ryan,[8] while according no weight to the opinion of her treating specialist, Dr. William Barney Smith.  Docket Entry No. 17.  Plaintiff further argues that the ALJ failed to consider the factors set forth in 20 C.F.R. § 404.1527(d) when evaluating the weight to be accorded Dr. Smith's opinion.  *Id.*

Defendant responds that the ALJ properly accorded no weight to Dr. Smith's opinion because Dr. Smith's opinion was inconsistent with his own treatment notes and contradicted the findings of other examining and reviewing physicians of Record.  Docket Entry No. 21.  Defendant further argues that the ALJ appropriately accorded the opinion of Dr. Smith no weight because Dr. Smith had treated Plaintiff for only a brief time and had made conclusory findings on a questionnaire concerning Plaintiff's pulmonary RFC.  *Id.*

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical

---

[8] Neither the ALJ nor Plaintiff named Dr. Michael Ryan as the state agency non-examining physician in their brief.  Docket Entry No. 17, TR 15-21A.  The Record reflects, however, that the state agency non-examining physician was Dr. Michael Ryan.  TR 200-205.

> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

As the Regulations require, the ALJ articulated the reasons why he accorded Dr. Smith's opinion no weight. TR 20-21. Specifically, the ALJ stated that he accorded no weight to the opinion of Dr. Smith because he found that Dr. Smith's findings on the pulmonary RFC questionnaire contradicted his own treatment notes. TR 20, 228-248. Beginning on March, 2, 2006, Dr. Smith found that Plaintiff suffered from hoarseness, throat restriction, irritation sensations with possible sinusitis, atopic rhinitis, obstructive lung disease, and eustachian tube dysfunction. TR 20, 228-230, 235-248. He treated her for asthma, pansinusitis, obstructive lung disease, and allergies and prescribed Xolair, Albuterol, and Advair. *Id.* He also noted that she wheezed on a daily basis. *Id.*

On June 22, 2006, Dr. Smith noted that he was hopeful that Plaintiff's wheezing would improve over the next six-month period with treatment. TR 236. Just a few weeks later, on July 12, 2006, however, Dr. Smith concluded in his pulmonary RFC questionnaire that Plaintiff's asthma limited her to minimal exertion, whereby she was only able to lift and carry less than ten pounds occasionally, stand or walk for less than two hours in an eight hour workday with no more than thirty minutes standing at a time, sit for about four hours in an eight hour workday with no more than two hours sitting at a time, and walk one-quarter city block without rest or severe pain.[9] TR 231-234. Dr. Smith opined that Plaintiff could occasionally twist, stoop

---

[9] The ALJ did not specifically name the pulmonary RFC questionnaire in his opinion as the opinion that he found to contradict Dr. Smith's treatment notes. TR 15-21A. A review of the Record, however, reveals that the ALJ's reference to Dr. Smith's July 12, 2006 opinion, was actually the pulmonary RFC questionnaire. TR 231-234.

11

(bend), and crouch/squat, but rarely climb ladders and stairs. *Id.* Dr. Smith also opined that

Plaintiff would need to, 1) take unscheduled breaks almost daily with each break lasting thirty

minutes; 2) avoid even moderate exposure to extreme cold or heat, high humidity, wetness,

cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and

chemicals; and 3) be absent more than four days per month. *Id.* Dr. Smith diagnosed Plaintiff

with chronic sinusitis, atopic rhinitis, COPD, and asthma with presenting symptoms such as

wheezing, episodic acute asthma, episodic acute bronchitis, and coughing. *Id*.

The ALJ also noted that Dr. Smith had treated Plaintiff for only three months before he

completed the pulmonary RFC questionnaire. TR 20-21. The ALJ concluded that, although a

treating relationship existed between Plaintiff and Dr. Smith, the brief three month treatment

history failed to reflect a longitudinal picture of Plaintiff's impairments. *Id.* Based on his review

of the evidence and the brief treatment history between Plaintiff and Dr. Smith, the ALJ

accorded no weight to the opinion of Dr. Smith because his restrictive opinion of Plaintiff's

functional limitations was inconsistent with his treatment notes. TR 20. This determination was

proper.

The ALJ instead accorded greater weight to the opinion of the state agency non-

examining physician, Dr. Ryan, that Plaintiff's pulmonary reserve was consistent with light work

activity. TR 21, 200-205. An ALJ may consider the opinion of a non-examining physician

designated by the Secretary in determining whether a claimant has medically determinable

impairments. *Reynolds v. Secretary*, 707 F.2d 927, 930 (6th Cir. 1983). After specifically stating

his findings based on his review of the evidence, Dr. Ryan found Plaintiff's symptoms partially

credible. TR 200-205. Dr. Ryan also noted that Plaintiff continued to smoke despite suffering

from exacerbations of asthma, and he opined that Plaintiff had the ability to stand, walk, and sit for six hours during an eight hour work day. *Id*.

Dr. Ryan's opinion is also consistent with the opinion of Dr. Gomez, an examining physician. TR 20. Dr. Gomez opined that Plaintiff had the ability to occasionally lift twenty to thirty pounds and stand and sit at least six hours in an eight hour work day. TR 175-178. The ALJ accorded significant weight to the opinion of Dr. Gomez because he found that it was consistent with the evidence as a whole. TR 20, 175-178. Plaintiff has not argued that the opinion of Dr. Gomez should have been accorded lesser weight compared to that of Dr. Smith, nor has Plaintiff explained how Dr. Gomez's findings regarding her functional limitations were reconcilable with the restrictive findings of Dr. Smith.

Dr. Smith treated Plaintiff for approximately three months, which, although a brief period, is a fact that could justify the ALJ's giving greater weight to his opinion than to other opinions. As has been noted, however, Dr. Smith's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of treating physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Smith's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

13

Although Plaintiff also contends that the ALJ failed to consider the factors required by 20 C.F.R. § 404.1527(d) when evaluating what weight to accord Dr. Smith's opinion, that is simply not the case. The ALJ fully considered all the required factors when he decided to accord no weight to that opinion. As noted above, the ALJ recognized the brief three month treatment history between Dr. Smith and Plaintiff. TR 20-21, 228-230, 231-234, 235-248. The ALJ also noted that Dr. Smith's opinion expressed in his pulmonary RFC assessment of Plaintiff was the most restrictive opinion in the Record, and was inconsistent with Dr. Smith's own treatment notes, as well as the other opinions of Record. *Id.* The ALJ further noted that Dr. Smith was an allergist, not a pulmonary specialist. *Id.* Plaintiff's argument fails.

## 2. Substantial Evidence Supporting the ALJ's Findings

Plaintiff argues that the ALJ's findings that her impairments did not meet or medically equal Listing 3.02(A) and that she retained the RFC to work as a groundskeeper,[10] were not supported by substantial evidence. Docket Entry No. 17.

With regard to chronic obstructive pulmonary disease, the Code of Federal Regulations states in pertinent part as follows:

> 3.00 *Respiratory System*
> . . .
> E. *Documentation of pulmonary function testing*. The results of spirometry that are used for adjudication under paragraphs A and

---

[10] In her brief, Plaintiff argues that the ALJ relied exclusively on the results of a single mental status examination to reject her testimony that her depression prevented her from working as a secretary. Docket Entry No. 17. Plaintiff, however, never claimed that she had been employed as a secretary or that depression had prevented her from working as a secretary. *Id.* Moreover, mental status examinations were not at issue in Plaintiff's case. *Id.* Because the Record does not indicate that Plaintiff had worked as a secretary or that depression had prevented her from working in that capacity, the undersigned therefore will not further discuss this argument.

14

B

of 3.02 . . . should be expressed in liters (L), body temperature, and pressure saturated with water vapor (BTPS). The reported one-second forced expiratory volume ($FEV_1$) and forced vital capacity (FVC) should represent the largest of at least three satisfactory forced expiratory maneuvers. Two of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests. A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1L, whichever is greater. *The highest values of the $FEV_1$ and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment.* . . .

Spirometry should be repeated after administration of an aerosolized bronchodilator under supervision of the testing personnel if the pre-bronchodilator $FEV_1$ value is less than 70% of the predicted normal value.

. . .

3.02 *Chronic pulmonary insufficiency*

A. Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes.

. . .

| Height without shoes (centimeters) | Height without shoes (inches) | $FEV_1$ equal to or less than (L, BTPS) |
|---|---|---|
| *161-165* | *64-65* [11] | *1.25* |

. . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 3.00(E) and 3.02(A) (emphasis added).

Plaintiff argues that she suffered from a $FEV_1$ of equal to or less than 1.25 and therefore met or equaled Listing 3.02(A). Docket Entry No. 17. Plaintiff also contends that the ALJ failed

_____

[11]Both Plaintiff's brief and Defendant's response agree that Plaintiff stands at a height of 5'5" (65 inches). Docket Entry Nos.17, 21.

15

to consider her mother's testimony at her hearing.[12]  *Id.*

Defendant responds that the ALJ supported his finding that Plaintiff failed to meet or medically equal Listing 3.02(A) with substantial evidence based on his review of the Record as a whole.  Docket Entry No. 21.  Defendant further cites 20 CFR Part 404, Subpart P, Appendix 1, § 3.00E, as support for its argument that, where multiple tests or tracings have been performed, the highest values achieved after administration of an aerosolized bronchodilator should be used to assess the severity of the respiratory impairment.  *Id.*  Defendant argues that, in relying upon the lowest of multiple achieved values and values achieved prior to the administration of a bronchodilator, Plaintiff ignored the regulatory requirements of the Listing.  *Id.*

The record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence" to support his decision.  Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and Plaintiff's mother.  While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff does not have COPD with an $FEV_1$ equal to or less than 1.25, as required by the Listing.  TR 18.  The ALJ noted that Plaintiff's pulmonary function studies had been inconsistent (TR 19) and the results of those studies did not meet the Listing requirements for disability (TR 18).  For example, Plaintiff had an $FEV_1$ of 1.39 on May 4, 2004 (TR 174); an $FEV_1$ of 1.56 on May 11, 2004 (TR 173); an

_____

[12] Plaintiff's brief also asserts that the ALJ "ignored the evidence" from "a current employer, and three other third parties."  Docket Entry No. 17, p. 22.  The Record does not indicate that Plaintiff was then-currently employed or that, in addition to Plaintiff's mother, "three other third parties" submitted evidence for consideration.  Accordingly, the undersigned cannot further address this argument.

16

FEV$_1$ of 1.13, 1.03, 1.11, and 0.99 on February 21, 2005 (TR 152-158); an FEV$_1$ of 1.47 on

March 29, 2005 (TR 170); an FEV$_1$ of 1.75 on November 1, 2005 (TR 183-184, 189); and an

FEV$_1$ of 2.00, 1.50, and 1.80 on November 17, 2005 (TR 199).

Additionally, the ALJ found that many of the opinions indicated that Plaintiff responded

to bronchodilators and that Plaintiff's breathing improved when she sought treatment. TR 19.

For example, Dr. Khare stated that Plaintiff could return her pulmonary status to normal with

"good tight management." TR 161. Dr. Battad found that Plaintiff responded to bronchodilators

(TR 210) and was gradually improving (TR 212). Dr. Smith opined that he was hopeful Plaintiff

would see improvement with treatment over a six-month period. TR 236. The ALJ also noted

that Plaintiff continued to smoke even after various physicians recommended that she stop. TR

15-21A, 138, 205, 210, 211, 212, 213, 229. The ALJ evaluated all of the evidence of Record

before determining that the Record did not support Plaintiff's contention that she met or

medically equaled Listing 3.02(A).

As has been noted, the reviewing court does not substitute its findings for those of the

Commissioner if substantial evidence supports the Commissioner's findings and inferences.

*Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion,

the decision of the Administrative Law Judge must stand if substantial evidence supports the

conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision was

properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

While Plaintiff contends that the ALJ failed to consider the testimony of Plaintiff's

mother, Wilma Neal, the ALJ simply did not do so. Docket Entry No. 17, TR 21. In fact, the

ALJ discussed the testimony of Ms. Neal and found that it deserved little weight because Ms.

17

Neal stated that her daughter was unable to do anything during a time period in which Plaintiff had worked two jobs in Florida. TR 21, 284-288. Additionally, Ms. Neal stated that her daughter was unable to be around cigarette smoke, even though the Plaintiff testified that she smoked less than a pack of cigarettes daily. TR 21, 272-273, 284-288. After considering Ms. Neal's testimony, the ALJ accorded it little weight because of these inconsistences. This determination was within his province. Plaintiff's argument fails.

### 3. The ALJ's Consideration of the Combined Effects of All Impairments

Plaintiff contends that the ALJ failed to properly evaluate the combined effect of her COPD, asthma, allergies, hypertension, mild obstructive sleep apnea with mild hypoxemia, moderate periodic limb movement, and hip pain. Docket Entry No. 17. Specifically, Plaintiff argues that the ALJ failed to give proper weight to the evidence of Record demonstrating that Plaintiff's impairments, in combination, equaled a listing. *Id*. Plaintiff also argues that the ALJ failed to address the pain associated with Plaintiff's conditions. *Id*.

Defendant responds that the Supreme Court's ruling in *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), which held that Plaintiff must present "medical findings equal in severity to all the criteria for the one most similar listed impairment" and "cannot qualify for benefits under the equivalence step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment" renders Plaintiff's assertion erroneous. Docket Entry No. 21. Defendant further responds that the ALJ clearly considered the effect of her impairments in combination because, in his opinion, he detailed his findings from the objective and testimonial evidence of Record and determined that the combined effects of Plaintiff's impairments did not meet or medically equal the severity of those

18

required by the listings. *Id*.

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of her impairments. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. Instead, Plaintiff simply maintains that the ALJ gave nothing more than "lip service" to his consideration of the combined effects of all of Plaintiff's impairments. Docket Entry No. 17.

The ALJ, after evaluating all of the medical, vocational, and testimonial evidence, determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. TR 18. In making this determination, the ALJ specifically noted, *inter alia*, that the pulmonary function studies and other testing failed to show that Plaintiff had chronic obstructive pulmonary disease with the $FEV_1$ equal to or less than 1.25, an FVC equal to or less than 1.45, a chronic impairment of gas exchange, chronic pulmonary hypertension and/or disturbances in cognitive function due to sleep apnea. *Id*. The ALJ also noted that he considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id*. The rationale in the ALJ's decision specifically addresses the medical evidence, as well as Plaintiff's testimony and subjective claims of pain, clearly indicating that these impairments were considered. TR 17-21A. There is no evidence to support Plaintiff's claims that the ALJ failed to consider the combined effect of her impairments or her subjective complaints of pain. *Id*.

Even though Plaintiff complained that she suffered from symptoms such as chest pain and a chronic cough, the ALJ found these statements concerning the intensity, persistence, and limiting effects of symptoms not entirely credible. TR 18. Additionally, the ALJ found that Plaintiff's statements regarding her subjective complaints about pain contained inconsistencies

about cigarette smoking, reducing her credibility. TR 19. The ALJ also noted that the Record was replete with evidence of strong advice from treating physicians beginning in at least 2002 that she should quit smoking as a way to improve her pulmonary status. TR 19, 138, 205, 210, 211, 212, 213, 229. It is clear from the ALJ's articulated rationale that the ALJ considered the Record as a whole when evaluating the combined effect of Plaintiff's impairments and when determining that Plaintiff's subjective complaints of pain were inconsistent and not entirely credible.

Moreover, the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing is supported by his consideration of each physician's assessment of Plaintiff's condition as it related to the evidence as a whole. TR 17-21A. As noted above, the ALJ found the pulmonary function study results to be inconsistent and fail to show that Plaintiff had COPD with the $FEV_1$ equal to or less than 1.25. TR 18. The ALJ detailed Dr. Gomez's finding regarding Plaintiff's alleged hip pain, finding that a previous hip fracture caused only a slight abnormality and had no more than a minimal effect on Plaintiff's ability to work. TR 17-18. The ALJ also discussed Dr. Turner's finding that Plaintiff suffered from mild obstructive sleep apnea, but that the Record failed to demonstrate if Plaintiff was using a CPAP machine. TR 18. The ALJ noted that Plaintiff's chest x-rays and CT scans were consistently normal and that emphysema was present in both upper lobes of her chest. TR 19, 140, 149, 184, 217. The ALJ further noted that Dr. Khare, Dr. Turner, Dr. Battad, and Dr. Smith all reported positive improvements and prognoses concerning Plaintiff's pulmonary function. TR 19-20, 161-168, 185, 212, 236. The ALJ noted that even though Plaintiff complained of shortness of breath, these asthma exacerbations did not require physician

20

intervention and she was able to perform activities with frequent rest even though she suffered from shortness of breath.  TR 21, 187.

There is substantial evidence in the Record to support the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing; the ALJ's decision, therefore, must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

Case 3:08-cv-00464   Document 22   Filed 06/25/09   Page 21 of 21 PageID #: 111